WHITE MOUNTAINS RAILROAD *v.* BAY STATE IRON COMPANY & A.

A bill in equity may be maintained to redeem a pledge, if an account is wanted, or if there has been an assignment of the pledge.

The pledgors of bonds secured by mortgages may redeem the bonds after the lapse of fifteen years, notwithstanding the pledgee has foreclosed the mortgages.

IN EQUITY. The questions arise upon demurrer to the bill, brought by White Mountains Railroad against Bay State Iron Company and B. T. Reed.

The bill alleges, in substance, that on the 10th day of May, 1853, the plaintiffs were indebted to the Bay State Iron Company in a large sum, which was at first represented by notes; that one of said notes, for $5,881.52, was executed for the purpose of paying and taking up a note, already in the hands of the Bay State Iron Company, for the sum of $5,790.36, which had become due, and that said company retained both of said notes though entitled to only one of them; that the said railroad paid the Bay State Iron Company, in December, 1854, and January, 1855, $3,825 on said notes, which has never been accounted for to said railroad, by said Bay State Iron Company, or by said Reed; that there was due on said debt, on the 18th day of May, 1868, $24,295.83, and no more; that said debt is now represented by

executions: One in favor of B. T. Reed against the White Mountains
    Railroad and certain sureties of said railroad, for  .  $11,359.77
One in favor of said Bay State Iron Company against said
    railroad, for  .  .  .  .  .  .  .  .  19,725.77
Nine in favor of said Bay State Iron Company against
    the individual sureties and indorsers of said railroad, for 80,275.93

|  |  |
|---|---:|
|  | $111,361.30 |
| Interest to May 18, 1868, added  .  .  .  . | 75,429.50 |
| Makes full amount of executions, .  .  .  . | $186,790.80 |
| Adding said note for $5,790.36, and interest to May | |
| 18, 1868, .  .  .  .  .  .  .  . | $10,460.17 |
| Full amount of Reed's nominal claim, .  .  . | $197,250.97 |

that bonds were pledged to secure the debt to the said Bay State Iron
Company, $33,200 of which still remain in Reed's hands; that these
bonds, being in all $180,000, were secured by mortgages, to trustees,
of all the property and franchises of said railroad; that the debt to
the Bay State Iron Company, and the bonds to secure it, were assigned
to said Reed February 27, 1857; that neither the Bay State Iron
Company, nor Reed, have ever, by sale or otherwise, made the said
collateral security their own property, or done anything in any way to
impair the right of said railroad to redeem said collateral security;
that an act of the legislature was passed June 27, 1857, allowing said
trustees to sell said railroad, and whatever property was mortgaged to
them, under the direction of the supreme court; that Ira Goodall,
Daniel Patterson, and Stephen Kenrick, who were then trustees, ob-
tained a decree of said court for such sale on the third Tuesday of
July, 1858; that two of said trustees, viz., Patterson and Kenrick,
undertook to sell the said railroad, and all the property mortgaged, to
George Minot, at auction, on the 3d day of November, 1858, for the
sum of $24,000; that said road and property was really purchased
by a combination of bondholders (of whom said Reed was one), under
a written agreement, making the said George Minot their agent for
that purpose; that the purchasers took possession of the property,
formed themselves into a new corporation, under the name of the White
Mountains (N. H.) Railroad, each receiving stock in said road accord-
ing to the amount of bonds he held; that said Reed, by virtue of the
bonds held by him as collateral security, received $41,800 of said
stock, and still holds the same; that the validity of said sale is nei-
ther admitted nor denied, but it is denied that it is in any way effect-
ive to release said Reed from the obligation to the said White Mount-
ains Railroad to hold said bonds and stock as collateral security for
the payment of his claim against said railroad; that said bonds and
said stock are still held by said Reed as collateral security as afore-
said, and that said railroad has a right to redeem the same; that
said Reed expressly agreed with the said plaintiffs, previous to said

sale, upon good consideration, that the security, in said bonds held by him, should not be impaired, and that the interests of said road should be fully protected, whether said road should be sold at a nominal price, or its full value; that said property sold for $24,000, when it was worth $200,000; that the sale, and the proceedings under it, did not conform to the decree of the court allowing the sale, or the provisions of the mortgages; that the purchase-money of said sale was never paid to the trustees, but only the expenses of the trust; that said Reed paid $1,650 as his share of the expenses of the trust and the expenses of organizing the new corporation, and no more, but received stock in the new corporation of the value of $41,800; that said Reed obtained said stock wholly by reason of holding said bonds as collateral security, and though said stock exceeds in value any just claim of said Reed against said road the sum of $17,504.17, yet said Reed holds all of said executions against said road, its sureties and endorsers, not reversed, annulled, or in any part satisfied, and claims that they are valid and just debts against the railroad, its sureties, and endorsers; that he also claims that he has only received on his debt $2,557.50, and that he has indorsed this, not on his executions, but on said bonds; that on the 18th day of May, 1868, the president and treasurer of said railroad offered to pay said Reed all that was due him from said White Mountains Railroad, and any proper claim that he had against said road, and requested him to deliver to them, upon such payment, said executions, and all claims held by him against said road, and said bonds and said stock of said White Mountains (N. H.) Railroad, but that said Reed refused to accept said offer or in any manner to accede to said request. The bill then prays for an injunction, and for an accounting between the plaintiffs and said Reed, and that, upon the payment of the sum of $24,295.83, or such sum as shall be found his due, he may be decreed to deliver up to the plaintiffs all of said executions, and said note of $5,790.36 to be cancelled, and also all of said bonds, and that he be ordered to transfer legally to the plaintiffs said stock.

The plaintiffs offer to bring into court, to be paid to said Reed, said sum of $24,295.83, or any sum that the court shall decree to be due to said Reed.

*C. W. & E. D. Rand, H. & G. A. Bingham, Farr & Son*, for plaintiffs.

*Hibbard, and Carpenter*, for defendants.

*SMITH, J. The defendants say that the plaintiffs have a plain and adequate remedy at law; being entitled to maintain trover after an improper sale by the pledgees, or after tendering the debt and demanding the pledge.

---

* BELLOWS, C. J., and FOSTER, J., did not sit.

But the existence of a legal remedy is not necessarily decisive against equitable jurisdiction; and, in the present case, we think a bill in equity may be maintained. However the rule may be in ordinary cases of pledge, there is authority for sustaining a bill to redeem where an account is wanted, or where there has been an assignment of the pledge. Story on Equity, section 1032; *Hasbrouck* v. *Vandervoort*, 4 Sandford Superior Court 74; *Kemp* v. *Westbrook*, 1 Vesey, senior, 278; see, also, *Demainbray* v. *Metcalfe*, 2 Vernon 691, 698; *Vanderzee* v. *Willes*, 3 Brown's Chancery Rep. 21; KENT, Chancellor, in *Hart* v. *Ten Eyck*, 2 Johnson Chancery 62, p. 100. The case of *Brown* v. *Runals*, 14 Wisconsin 693, seems to go further than these authorities, or than the plaintiffs require to go in this case.

The defendants contend that, upon the allegations of the bill, the plaintiffs are not entitled to any relief. This position cannot be sustained. A failure to pay the debt at maturity does not vest the property in the pledge in the pledgee. The pledgee's possession is not regarded as adverse to the pledgor, and does not bar his right to redeem unless it has continued for so long a time as to raise a presumption that the pledgor has relinquished his title in satisfaction of the debt. If the pledgee does not choose to exercise, in a proper manner, his acknowledged right to sell, he still retains the property as a pledge, and the pledgor's right to redeem continues. See Story on Bailments, sections 346, 348; Story on Equity, section 1032; 2 Kent's Com. 581–2; *Kemp* v. *Westbrook*, 1 Vesey, senior, 278; Comyn's Digest, *title* " Mortgage by Pledge of Goods (B) ;" *Walter* v. *Smith*, 5 B. and Ald. 439; *Cortelyou* v. *Lansing*, 2 Caines' Cases in Error 199. In the present case there has been no sale of the pledged property. The bonds, not the mortgages, were the property pledged. The mortgages were mere incidents to the bonds secured by them, and a sale of the mortgaged property was not a sale of the bonds.

If the sale was valid, Reed holds whatever he has realized thereby on the same terms as he held the bonds. If the sale was invalid, it may be that Reed must account for whatever he has received under it to the trustees of the mortgages, that they may apply it for the benefit of all parties secured by those mortgages. Upon the receipt of his debt, Reed is bound to restore to the plaintiffs the bonds, and also all the avails of the bonds except such portion as he may be under a paramount liability to account for in some other quarter.

*Demurrer overruled.*